**BLUDWORTH BOND SHIPYARD, INC., Plaintiff–Appellee,**

v.

**M/V CARIBBEAN WIND, Her Engines, Tackle, Etc., In Rem, et al., Defendants,**

**Rolf Westerstrom, Defendant–Appellant.**

No. 86–2577.

United States Court of Appeals, Fifth Circuit.

April 8, 1988.

Malinda G. York, Houston, Tex., for defendant-appellant.

James A. Newsom, Dan H. Hinds, Hinds & Meyer, Houston, Tex., for plaintiff-appellee.

Before THORNBERRY, GARWOOD, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Defendant-appellant Rolf Westerstrom (Westerstrom) appeals the district court's denial of his motion to set aside a default judgment entered in favor of plaintiff-appellee Bludworth Bond Shipyard, Inc. (Bludworth). Westerstrom contends that the default judgment is void for want of personal jurisdiction because (1) service of process did not comply with the Texas long-arm statute and (2) he did not have sufficient minimum contacts with Texas to be subject to long-arm jurisdiction and therefore amenable to service. We agree that Westerstrom was not properly served, and accordingly we reverse and remand.

## I.

On September 12, 1983, Bludworth filed this action in the United States District Court for the Southern District of Texas against the M/V CARIBBEAN WIND, *in rem*, and Westerstrom and Contrast Shipping, Ltd., *in personam*, to recover an unpaid balance of $12,497.53 for repairs performed on the vessel during September 1982 at Bludworth's Houston, Texas shipyard. Bludworth alleged that it had performed the repairs pursuant to a contract with Westerstrom and Contrast Shipping, Ltd. Jurisdiction was predicated on 28 U.S.C. § 1333(1) (admiralty). The complaint alleges that Westerstrom is a resident of Florida and does not have an office, place of business, or agent for service in Texas, but entered into a contract with plaintiff to be performed in Texas, and that the suit arises out of Westerstrom's breach of contract.

As allowed by Fed.R.Civ.P. 4(c)(2)(C)(i), Bludworth attempted to serve defendants in accordance with the now recodified Texas long-arm statute, Tex.Rev.Civ.Stat.Ann. art. 2031b (Vernon 1984).[1] Bludworth served the Texas Secretary of State in Sep-

---

1. Article 2031b provided in relevant part:

   **"Act of engaging in business in state as equivalent to appointment of Secretary of State as agent**

   "Sec. 3. Any ... non-resident natural person that engages in business in this State ... and does not maintain a place of regular business in this State or a designated agent upon whom service may be made upon causes of action arising out of such business done in this State, the act or acts of engaging in such business within this State shall be deemed equivalent to an appointment by such ... non-resident natural person of the Secretary of State of Texas as agent upon whom service of process may be made in any action, suit or proceedings arising out of such business done in this State, wherein such ... non-resident natural person is a party or is to be made a party.

   **"Doing business in state; definition**

   "Sec. 4. For the purpose of this Act, and without including other acts that may constitute doing business, any ... non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State....

   **"Delivery of process to Secretary of State; forwarding copy**

   "Sec. 5. Whenever process against a ... non-resident natural person is made by delivering to the Secretary of State duplicate copies of such process, the *Secretary of State shall require a statement of the name and address of the home or home office of the non-resident.* Upon receipt of such process, the Secretary of State shall forthwith forward to the defendant a copy of the process by registered mail, return receipt requested." (Emphasis added.)

   Effective September 1, 1985, after the district court entered the default judgment and before Westerstrom answered, the Texas Legislature revised and recodified article 2031b. *See* Tex. Civ.Prac. & Rem.Code §§ 17.041–.045 (Vernon 1986). The relevant portions of section 3 are recodified in section 17.044(b), the relevant portions of section 4 are recodified in section 17.-042(1), and the relevant portions of section 5 are recodified in section 17.045(a). In all respects material to this case, the statutes are indistinguishable. This is in keeping with the legislative intent that the Civil Practice and Remedies Code is not a substantive revision of the law. *See* Tex.Civ.Prac. & Rem.Code Ann. § 1.001(a) (Vernon 1986). Nevertheless, we decide this appeal under article 2031b, which was the law in effect when process was purportedly served and judgment was entered. *See Regal Properties v. Donovitz,* 479 S.W.2d 748, 751 (Tex.

tember 1983. The Secretary of State forwarded to each defendant a copy of the citation and petition. The copies were sent certified mail, return receipt requested, to the Miami, Florida address alleged in the complaint as being the office address of each defendant; these citations were each returned "Unclaimed" on October 13, 1983. In November, Bludworth again served the Secretary and provided a different, new address, the same for each defendant. The Secretary forwarded process for each defendant to this new address and, on December 1, 1983, the envelopes were each again returned. Westerstrom's envelope bore the notation "Moved, Left No Address." The district court entered a judgment of default against defendants in September 1984.[2]

On April 29, 1986, after Bludworth noticed a deposition of Westerstrom in aid of execution of the judgment, Westerstrom filed an answer and a motion to set aside the default judgment. The answer denies that Westerstrom entered into a contract with plaintiff, and alleges that whatever Westerstrom did in that connection was only as an agent for a disclosed principal. In the motion to set aside, Westerstrom clearly asserted that Bludworth had not served him and that the court therefore lacked personal jurisdiction over him. We will treat these concurrently filed papers as properly raising the issue of personal jurisdiction.[3]

In his affidavit accompanying the motion to set aside, Westerstrom claimed that:

(1) Contrast Maritime, Ltd., not Contrast Shipping, Ltd., owned the M/V CARIBBEAN WIND;

(2) he was a minority shareholder in Contrast Maritime, Ltd.;

(3) he ordered the repairs on behalf of Contrast Maritime, Ltd.[4];

(4) the first address at which Bludworth attempted to serve him was the office of Contrast Maritime, Ltd., which was closed in August 1983;

(5) he had not lived at the second address at which Bludworth attempted to serve him since 1981; and

(6) he had no notice of the judgment until July 1985 when he was served with a notice of the deposition in aid of execution.

Bludworth disputed Westerstrom's assertion that he first learned of the suit in July 1985 and filed an affidavit of its Florida attorney stating that the attorney first contacted Westerstrom in November 1984 and again in February 1985. Westerstrom's attorney then filed an affidavit stating that Westerstrom may have spoken with the Florida attorney prior to July 1985, but "was under the impression that the matter against him personally would no longer be pursued." Bludworth did not contest Westerstrom's claim that when suit was filed and service was attempted he did not live or office at any of the addresses that Bludworth gave the Texas Secretary of State and did not have notice of this suit until after the default judgment was entered.

On June 23, 1986, the district court held a conference and denied without explanation Westerstrom's motion to set aside the judgment. This appeal followed.

## II.

The issue before us on appeal is whether the district court erred in denying Wester-

Civ.App.—Dallas 1972, writ ref'd n.r.e.). *See also Morrison By Morrison v. Williams*, 665 S.W.2d 212, 214 (Tex.App.—San Antonio 1984, no writ).

2. On January 11, 1985, the district court entered an amended default judgment that corrected the spelling of Westerstrom's name.

3. Bludworth has not raised the possible issue of waiver pursuant to Fed.R.Civ.P. 12(h) (objections to personal jurisdiction or to service of process may be waived if not raised in a party's first pleading or motion). Accordingly, we do not reach the issue but note that the answer and

motion were filed concurrently, and under Fed.R.Civ.P. 8(f) "[a]ll pleadings shall be so construed as to do substantial justice."

4. Apparently there is more than a little confusion as to what entities are involved here. Westerstrom's brief on appeal indicates that Contrast Shipping Line Management, Inc. was the operator of the vessel and that he ordered the repairs on behalf of that corporation and not Contrast Maritime, Ltd. Bludworth sent the invoices to "Contract Shipping Line, Ltd."

strom's motion to set aside the default judgment for want of personal jurisdiction. Rule 60(b)(4), Fed.R.Civ.P., authorizes the relief that Westerstrom seeks.[5] Bludworth argues that we may reverse a district court's decision under Rule 60(b) only for an abuse of discretion. Bludworth contends that the district court had jurisdiction over Westerstrom and that Westerstrom's delay in seeking relief precludes our finding an abuse of discretion.

■ Generally, we will not disturb a district court's decision to deny relief under Rule 60(b) unless the denial is "so *unwarranted* as to constitute an abuse of discretion." *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir.1981) (emphasis in original). When, however, a district court lacks jurisdiction over the defendant because of lack of service of process, the judgment is void and, under Rule 60(b)(4), the district court *must* set it aside, *Recreational Properties v. Southwest Mortg. Service*, 804 F.2d 311, 314 (5th Cir.1986), regardless of whether the movant has a meritorious defense, *Broadcast Music, Inc. v. M.T.S. Enterprises*, 811 F.2d 278, 280 (5th Cir.1987); *see also Peralta v. Heights Medical Center, Inc.*, — U.S. —, 108

S.Ct. 896, 99 L.Ed.2d 75 (1988); *Miner v. Punch*, 838 F.2d 1407, 1410 (5th Cir.1987). Furthermore, there is generally no timeliness requirement applicable to a Rule 60(b)(4) motion. *See generally* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2862 at 197 (1973).[6]

Thus, our inquiry in this case focuses on Bludworth's attempts to serve Westerstrom with process pursuant to the Texas long-arm statute. There are two separate prongs to this inquiry: (1) whether Westerstrom was amenable to service and (2) whether Westerstrom "was, in fact, served in the manner required by statute." *Whitney v. L & L Realty Corp.*, 500 S.W.2d 94, 95–96 (Tex.1973); *U.N.L., Inc. v. Oak Hill Photo Finishing*, 733 S.W.2d 402, 404 (Tex. App.—San Antonio 1987, no writ). *See also Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777–78 (5th Cir.1986) (discussing due process limitation on long-arm jurisdiction), *cert. denied*, — U.S. —, 107 S.Ct. 1892, 95 L.Ed.2d 499 (1987).[7] We begin with the service requirements under article 2031b.

### A. Service of Process

■ Article 2031b, section 5, requires a "statement of the name and address of the

5. Pursuant to Fed.R.Civ.P. 55(c), the district court may set aside a default judgment "in accordance with rule 60(b)." Rule 60(b), Fed.R. Civ.P., provides in relevant part: "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment ... for the following reasons: ... (4) the judgment is void...."

6. Professors Moore and Lucas agree that there is no time limitation on a Rule 60(b)(4) motion but note that there may be "exceptional situations" when a court might deny such a motion for lack of diligence, 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 60.25[4] at 60–242 (2d ed. 1987). Since there seems to be universal agreement that laches cannot cure a void judgment, and no court has denied relief under Rule 60(b)(4) because of delay, such "exceptional situations" are difficult to imagine. Nonetheless, we are confident that when, as here, relief is sought promptly after a default judgment holder takes action to enforce the judgment and there is nothing which could give rise to an estoppel, the judgment must be set aside if it is void.

7. If Westerstrom had challenged service of process in a collateral attack on the judgment, the recitation of due service on the face of the judgment would likely be conclusive under Tex-

as law. *See A.L.T. Corp. v. Small Business Admin.*, 801 F.2d 1451, 1457 (5th Cir.1986). Westerstrom's Rule 60(b) motion, however, was a direct attack on the default judgment. *See Prine v. American Hydrocarbons, Inc.*, 519 S.W.2d 520, 522 (Tex.Civ.App.—Austin 1975, no writ); Hodges, *Collateral Attacks on Judgment*, 41 Tex.L. Rev. 163 (1962). We therefore engage in the two-prong inquiry set forth above. We note, however, a possible tension in the law with regard to the burden of proof. Texas law places the burden on the plaintiff, *Whitney*, 500 S.W.2d at 95–96, whereas the Rule 60(b) movant generally bears the burden of proving his entitlement to relief, *see, e.g., Montgomery v. Hall*, 592 F.2d 278, 278–79 (5th Cir.1979); *United States v. Harrison County, Mississippi*, 463 F.2d 1328, 1330 (5th Cir.1972). Because the facts relevant to the issue of service in this case are uncontested, we are able to determine the adequacy of service as a matter of law and need not resolve this tension. We do further note, though, that the cases under Rule 60(b) involved issues left to the discretion of the court, such as fraud or newly discovered evidence, and not whether the judgment was void for want of personal jurisdiction of the court, such as here.

home or home office of the non-resident." Westerstrom's uncontradicted affidavit established that Bludworth twice provided the Secretary of State with an address for Westerstrom which was then out of date, and had been so ever since a time prior to the filing of the suit. These incorrect addresses were those used by the Secretary of State in mailing the citations. Westerstrom never received either citation; and, he did not receive actual notice of the suit until after the district court entered the default judgment. We must decide whether such service complied with article 2031b, section 5.

In Texas, service of process under the long-arm statute must be in strict compliance with the statute. *See, e.g., U.N.L., Inc.,* 733 S.W.2d at 404; *C.W. Bollinger Ins. Co. v. Fish,* 699 S.W.2d 645, 647 (Tex. App.—Austin 1985, no writ); *Verges v. Lomas & Nettleton Financial Corp.,* 642 S.W.2d 820, 821 (Tex.App.—Dallas 1982, no writ). Thus, providing the Secretary with the "last known address" of a defendant, for example, does not strictly comply with article 2031b, section 5 ("name and address of the home or home office of the non-resident"). *Verges,* 642 S.W.2d at 821–23 (process mailed to defendant and returned "unclaimed"). *See also Lynn McGuffy Co. v. Perfected Indus. Prod.,* 683 S.W.2d 781, 782 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Fish,* 699 S.W.2d at 647–50, 656 (long-arm statute requiring service by mail to the "last known principal place of business" not strictly complied with when citation mailed to the "last known address"). This rule effectuates the state's "strong policy that defendants ought not to be cast in personal judgment without notice." *Whitney,* 500 S.W.2d at 97.[8] It also is in accord with the requirement under Rule 60(b) that, because courts prefer adjudication on the merits, there "must be strict compliance with the legal prerequisites establishing the court's power to render the [default] judgment." *Varnes v. Local 91, Glass Blowers, Etc.,* 674 F.2d 1365, 1369 (11th Cir.1982).

In light of this rule of strict compliance, we see little difference between service by mail to an allegedly "last known" address that is no longer a current address and service by mail to an alleged "address" that is in fact then (and at all relevant times) an out-of-date address. Accordingly, we hold that section 5 of article 2031b required Bludworth to give the Secretary of State a then current address.[9] Because Bludworth failed to meet this requirement, with the result that the process was never sent to a correct address and never reached Westerstrom, the district court did not have personal jurisdiction over Westerstrom, and the default judgment is void.

### B. Amenability to Service

Westerstrom contends that he is not amenable to service under the Texas long-arm statute for a breach of the contract to repair the M/V CARIBBEAN WIND. He maintains that he negotiated the contract solely in the disclosed capacity of agent of either the owner or operator of the vessel, who were identified to Bludworth. In support of his agency argument, Westerstrom

---

**8.** There appear to be two exceptions to this rule of strict construction, neither of which apply here. The first is when a company breaches a duty to maintain a registered office. In *Txxn, Inc. v. D/FW Steel Co.,* 632 S.W.2d 706 (Tex.App.—Ft. Worth 1982, no writ), plaintiff had sought to serve defendant pursuant to the Texas Business Corporation Act, which provides for substituted service upon the Secretary of State and service by mail upon the defendant corporation at its registered office. A copy of the citation was returned "Not Deliverable As Addressed, Unable To Forward." Although the court held that plaintiff had strictly complied with the requirements of substituted service under the statute, the defendant corporation's failure to notify the Secretary of its change in address as required by the Texas Business Corporation Act perhaps better explains the decision.

The second exception applies in situations where the defendant attempts to evade service. *See BLS Limousine Service v. Buslease, Inc.,* 680 S.W.2d 543, 546 (Tex.App.—Dallas 1984, writ ref'd n.r.e.) ("Although the citations returned to Secretary bearing the notation 'Refused,' appellants were served in accordance with the requirements of article 2031b.").

**9.** We note that section 17.045(a) (Secretary "shall require a statement of the name and address of the nonresident's home or home office") would also apparently require a current address.

points out on appeal that the invoices were addressed not to him but to "Contract Shipping Line, Ltd." But Ray Etheridge, Bludworth's repairs superintendent, contested Westerstrom's agency claim, stating in an affidavit submitted to the district court that Bludworth looked to Westerstrom for payment. The record does not indicate that the district court resolved this factual dispute.

The Texas Court of Appeals recently held that Texas courts may only exercise long-arm jurisdiction over a nonresident for a breach of contract if the nonresident actually entered into a contract with a resident of Texas. *Ross F. Meriwether & Assoc., Inc. v. Aulbach*, 686 S.W.2d 730, 732 (Tex.App.—San Antonio 1985, no writ).

> "An agent is not a party to, nor individually liable on, a contract he enters into on behalf of his principal. It is the principal who enters into the contract.... When an agent arrives in Texas to negotiate a contract for his principal, only the principal does business in the state. The agent, having entered into no contract, has done no business in Texas, and, therefore, has done no act nor has he consummated a transaction in Texas." *Id.* at 731 (citations omitted).[10]

We do not now resolve whether this decision is consistent with the general rule that the Texas long-arm statute extends to the limits of due process. *Holt Oil & Gas*, 801 F.2d at 777. But if service is hereafter properly effectuated on Westerstrom under the long-arm statute, then whether he entered into the contract with Bludworth solely as an agent for one of the Contrast entities, as a disclosed principal, may well have to be expressly resolved by the district court in order to determine the issue of amenability to out-of-state service of process which would then be presented.

### III.

Because Bludworth did not properly serve Westerstrom, we hold that the district court lacked personal jurisdiction over Westerstrom and, consequently, reverse its denial of Westerstrom's motion to set aside the default judgment. However, we express no opinion on what procedure the district court should employ on remand after it sets aside the judgment. At least one option is to quash the service of process pursuant to Fed.R.Civ.P. 12(b)(5) and address Westerstrom's amenability to service under the long-arm statute when and if he is properly served thereunder. *See generally* C. Wright & A. Miller, *Federal Practice and Procedure* § 1353 (1969).

The district court's denial of Westerstrom's motion to set aside the default judgment is reversed and the cause is remanded to the district court for further proceedings consistent herewith.

REVERSED and REMANDED.

---

**10.** Although *Aulbach* was decided under section 4 of article 2031b, the recodification of article 2031b, at section 17.042(1), does not affect the applicability of the holding therein.